UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BFP Investments 4, LLC, <br><br>    Plaintiff <br>v. <br><br>Nationstar Mortgage, LLC dba Mr. Cooper, et al., <br><br>    Defendants | Case No. 2:22-cv-00287-JAD-DJA <br><br>**Order Granting in Part and Denying in Part Crossmotions for Summary Judgment** <br><br>[ECF Nos. 36, 37] |

  BFP Investments 4, LLC, bought the property at 4312 Desert Haven Avenue in North Las Vegas, Nevada, in a 2014 HOA foreclosure sale for a fraction of the $238,180 mortgage that encumbers the property and has long gone unpaid.  When BFP finally sought to pay off the debt at the end of 2021, Nationstar Mortgage, LLC, which is the beneficiary of the deed of trust that secures the loan, rejected BFP's tender, prompting BFP to sue for violations of Nevada's statutory scheme governing such payoff procedures and for a declaration that BFP's tender discharged the debt.  In crossmotions for summary judgment, BFP argues that Nationstar improperly rejected its wire of the full sum that the lender identified in its statutory notice as the payoff amount, while Nationstar contends that a days-later communication amended that statutory notice, leaving BFP's tender thousands of dollars short.  The parties crossmove for summary judgment.  Because Nevada law guarantees that the recipient of a statutory notice "may rely upon the accuracy of the information contained in" it, and I find that no reasonable juror could credit Nationstar's characterization of that second communication as an amended statutory notice, I grant BFP summary judgment on its quiet-title claim.  But I grant summary judgment against BFP on its NRS 107.077 claim because it lacks standing for the remedies that the statute provides.

Analysis

**I.     BFP is entitled to summary judgment in its favor on its quiet-title claim.**

In August 2021, Omar Nassar, BFP's managing member, contacted Nationstar's trustee, Quality Loan Servicing Corporation, to negotiate the debt remaining on the Desert Haven property.[1] Quality directed Nassar to the law firm of McCarthy & Holthus (M&H), which was representing Nationstar on this loan.[2] Kristin Schuler-Hintz, Esq., an attorney at M&H, was copied on Quality's email to Nassar and contacted him directly, advising him that she was "retained to represent the interest of Fannie Mae and the Servicer in regards to the" Desert Haven property and that "[t]he total payoff" on it was "approximately $325,000."[3] She asked, "Do you have an initial offer to tender to my client?"[4]

Thus began months of back-and-forth discussions between Schuler-Hintz and Nassar about the composition of the debt and potential solutions for its discharge.[5] On December 20, 2021, counsel for Nassar and BFP sent Schuler-Hintz a request for the payoff amount under Nevada Revised Statute (NRS) 107.210.[6] That statute requires the beneficiary of a deed of trust who receives "a request from" a successor-in-interest to mail or fax "to that person a statement regarding the debt secured by the deed of trust" that includes several categories of information, including the payoff amount.[7] Schuler-Hintz responded to that request the very next day,

---

[1] ECF No. 37-6.
[2] ECF No. 37-9.
[3] ECF No. 37-10 at 7.
[4] *Id*. at 8.
[5] *Id*. at 5–36.
[6] *Id*. at 38.
[7] Nev. Rev. Stat. §§ 107.200, 107.210.

2

"[p]lease allow this correspondence to serve as a response to [that] correspondence . . . ."[8]  Her letter set forth the information required by the statute and expressly references it.  It states that "[t]he amount necessary to discharge the debt secured by the Deed of Trust as of 12/30/2021" is $324,900.31:[9]

> December 21, 2021
>
> BFP Investments 4, LLC
> c/o Messner Reeves, LLP
> 8945 W. Russell Road, Suite 300
> Las Vegas, NV 89148
> khanks@messner.com
>
> **Re: Demand for Documents Pursuant to NRS 107.210**
> Property Address: 4312 Desert Haven Ave., North Las Vegas, NV 89085
> APN No.: 124-07-311-010
> Our File No.: NV-21-893488-CV
>
> Dear Ms. Hanks:
>
> Please be advised that this office has been retained to represent the interests Nationstar Mortgage, LLC. regarding the above-titled matter.  Please allow this correspondence to serve as a response to your correspondence dated December 20, 2021, requesting information pertaining to the loan related to Douglas Halvorson, obtained in September 2006.  In response thereto:
>
> NRS 107.210
>
> 1. The identity of the trustee or the trustee's personal representative or assignee:
>    The current Trustee is Quality Loan Service Corporation;
>
>    The current holder of the note secured by the deed of trust:
>    Nationstar Mortgage, LLC., d/b/a Mr. Cooper
>    The beneficiary of record:
>    Nationstar Mortgage, LLC., d/b/a Mr. Cooper
>    and the servicer of the obligation or debt secured by the deed of trust:
>    Nationstar Mortgage, LLC., d/b/a Mr. Cooper
>
> 2. The amount necessary to discharge the debt secured by the Deed of Trust as of 12/30/2021:
>    $324,900.31

---

[8] *Id.* at 40.

[9] ECF No. 36-6 at 2.

On December 30, 2021, BFP wired that stated discharge sum of $324,900.31 to Nationstar.[10]  Four days later, BFP's counsel emailed Schuler-Hintz seeking confirmation of receipt of the wire and "a copy of the reconveyance once it's recorded."[11]  On January 13, 2022, without explanation, Nationstar sent back the amount that BFP had wired two weeks earlier, less $50.[12]  BFP now sues Nationstar to quiet title and for the remedies that NRS Chapter 107 provides for the delayed reconveyance of a deed of trust.[13]

**A.   BFP was entitled to rely on the December 21st payoff statement.**

NRS 107.250 guarantees that the recipient of a statement under NRS 107.210 "may rely upon the accuracy of the information contained in the statement."[14]  If it turns out that the payoff statement "does not contain the entire amount necessary to discharge the debt secured by the deed of trust," then "the beneficiary may recover" the shortfall "as an unsecured debt of the grantor" under the terms of the mortgage note.[15]  There is no genuine dispute that Schuler-Hintz's December 21st letter, sent expressly "[p]ursuant to NRS 107.210,"[16] was the type of payoff letter on which BFP was entitled to rely.  It advised that "[t]he amount necessary to discharge the debt secured by the Deed of Trust as of 12/30/2021" was $324,900.31.[17]  So when

---

[10] ECF No. 36-20.
[11] ECF No. 36-11 at 2; ECF No. 36-18 at ¶ 7.
[12] ECF No. 36-18 at ¶ 8.
[13] ECF No. 2 (complaint).
[14] Nev. Rev. Stat. §107.250(1).
[15] *Id*. at §107.250(3).
[16] ECF No. 36-6.
[17] *Id*. at 2.

4

BFP wired that exact sum by that deadline, it had the statutory right to rely on the accuracy of Schuler-Hintz's payoff quote.[18]

    **B.    Nationstar did not amend its NRS 107.210 statement before BFP tendered the payoff amount.**

Nationstar argues that BFP had no right to rely on the payoff amount in that December 21st NRS 107.210 statement because Nationstar amended the payoff amount and NRS 107.250(1) contemplates that an amended NRS 107.210 statement supersedes an original one. But the record does not support the conclusion that Nationstar in fact amended the NRS 107.210 statement. It rests this theory on the parallel set of communications between Nassar and an employee named Donna Hopkins at Nationstar's trustee, Quality. Eager to get the payoff amount wired by the December 30th deadline in Schuler-Hintz's NRS 107.210 statement, Nassar independently called a number on Quality's website to get wiring instructions.[19] He reached Hopkins and explained what he was trying to do, and she told him that she could not provide him with wiring instructions without generating a payoff quote.[20] So on December 27, 2021, she

---

[18] Nationstar argues that BFP's request was ineffective to trigger any rights or obligations under NRS 107.210 because it was sent to Schuler-Hintz instead of "to the address of the beneficiary listed on the note or deed of trust." ECF No. 37 at 11. Were BFP claiming that Nationstar failed to comply with NRS 107.210, this argument may be persuasive, but BFP brings no such claim. *See* ECF No. 2 at 3–4 (complaint, which asserts a statutory claim for failure to comply with NRS 107.077, which contains remedies for failure to reconvey a deed of trust after the debt is satisfied). And NRS 107.250, which provides that "[a] person who receives a statement pursuant to NRS . . . 107.210 may rely upon the accuracy of the information contained in the statement," is triggered by the issuance of "a statement pursuant to" NRS 107.210, which Schuler-Hintz's December 21st letter plainly was, as it both cited and tracked the format of the statute. *See* ECF No. 36-6 at 2.

[19] ECF No. 37-6 at 10 (Nassar Dep. at 74–75).

[20] ECF No. 37-12 at 8 (Hopkins Dep. at 71–72).

5

ordered a payoff quote that was good for about the next 30 days, in accordance with standard procedure,[21] and she emailed it to Nassar on the afternoon of December 30th:[22]

**mr. cooper**
RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
PO Box 818060
5801 Postal Road
Cleveland, OH 44181
CHANGING THE FACE OF HOME LOANS

**QUOTE INFORMATION**
Statement Date: 12/30/21
Payoff Good Through Date: 1/26/22
Loan Number: 0658165758
Property Address: 4312 DESERT HAVEN AVE
NORTH LAS VEGAS, NV 89085
Customer Fax: 6195683599

STEPHANIE L HALVORSON
4312 DESERT HAVEN AVE
NORTH LAS VEGAS, NV 89085

**PAYOFF BREAKDOWN**
| | |
|---|---|
| Current Unpaid Principal Balance: | $233,946.32 |
| Interest - from 12/1/13 to 1/26/22 | $74,612.01 |
| Deferred Late Fees | $456.88 |
| Lender Paid Expenses | $7,990.23 |
| Escrow Advances | $13,457.50 |
| Legal Fees | $215.00 |
| County Recording Fee | $42.00 |
| Third Party Reconveyance Preparation Fee | $20.00 |
| **TOTAL PAYOFF AMOUNT** | **$330,739.94** |
| | GOOD THROUGH 1/26/22 |

**INTEREST**
| | |
|---|---|
| Annual Interest Rate | 2.000% |
| Interest Calculated From | 12/1/13 - 1/26/22 |
| Daily Interest Amount* | $32.85 |

**HOW IS THIS CALCULATED?**
This is actually quite simple but also tricky. Essentially, your annual interest rate, remaining balance, and days are distilled down into a single number. Here's how we calculated your daily rate. Learn more on the next page.

**HOW IS MY DAILY INTEREST CALCULATED?**
{upb} x {interest rate} / {365} x {number of days up to payoff date} = daily interest due

*Funds received after the good through date 1/26/22 or funds that cannot be posted due to missing or incorrect information will require an additional $32.85 of interest per day.

**ESCROW**
We will continue to make escrow disbursements up to the date of payoff. Please note, this may be paid up to 30 days before the due date.

| | DUE DATE | AMOUNT |
|---|---|---|
| HAZARD SFR | 3/7/22 | $1,675.00 |
| COUNTY TAX | 2/1/22 | $525.94 |

**PAYMENT INSTRUCTIONS**
Payoff funds must be remitted via certified funds (wire transfer or cashier's check only).

**WIRE TRANSFER**
Beneficiary Name: Mr. Cooper
Account #: 46290001932064
ABA/Routing NUMBER: 021000021
Bank Name: JP Morgan Chase Bank, NA
Bank Address: 270 Park Ave
New York, NY 10017

**CASHIER'S CHECKS**
Cashier's Checks must be made payable to Mr. Cooper and mailed to:
Mr. Cooper
Lake Vista 4
800 State Highway 121 Bypass
Lewisville, TX 75067
*Customer Name, Loan Number, and Property Address should be provided

Nassar disregarded the new payoff amount and instead sent the amount quoted in Schuler-Hintz's NRS 107.210 statement using the payment instructions on this new payoff quote that

---

[21] *Id*. (Hopkins Dep. at 72–73).
[22] ECF No. 36-10.

Hopkins provided.[23] Four days later, Schuler-Hintz sent a letter to BFP's counsel, Karen Hanks, Esq., taking the position that the payoff quote that Hopkins emailed to Nassar was "an amendment" to her "NRS 210" statement and now advising that the payoff amount had increased to $330,739.94, "calculated with interest as good through 1/26/22":[24]

> January 3, 2022
>
> BFP Investments 4, LLC
> c/o Messner Reeves, LLP
> 8945 W. Russell Road, Suite 300
> Las Vegas, NV 89148
> khanks@messner.com
>
> **Re: Demand for Documents Pursuant to NRS 107.210**
> Property Address: 4312 Desert Haven Ave., North Las Vegas, NV 89085
> APN No.: 124-07-311-010
> Our File No.: NV-21-893488-CV
>
> Dear Ms. Hanks:
>
> Pursuant to NRS 107.250 please be advised of an amendment to the NRS 210 response. As your client was notified on December 30, 2021, we are advising you on the next business day, today, January 3, 2022.
> NRS 107.210
>
> 1. The amount necessary to discharge the debt secured by the Deed of Trust as of 12/30/2021 (calculated with interest as good through 1/26/22):
>    $330,739.94

But just saying so didn't make it so. Nothing on that December 30th payoff statement references NRS 107.210 or Schuler-Hintz's letter. Its format is markedly different, and it gives no nod to the statute. It's not even directed to BFP or its counsel; it's addressed to the foreclosed-upon homeowner.

---

[23] ECF No. 37-6 at 12 (Nassar Dep. at 82–84).
[24] ECF No. 36-12 at 2.

7

There is also no evidence that, in emailing that payoff quote on December 30th, Hopkins or anyone else at Quality or Nationstar meant to amend the NRS 107.210 statement from nine days earlier. Hopkins didn't even know that the NRS 107.210 statement existed as there was no notation of it in the lender's computer system, and she was "seeing that the last payoff quote was dated September 2021."[25] So Hopkins was merely "thinking in December of 2021 [that she] would need to get [Nassar] a more current payoff" in order to generate wiring instructions, as that was the company's process.[26] Hopkins did not even speak to Schuler-Hintz.[27]

Because there is no evidence that the communications between Hopkins and Nassar before Nassar wired the sum Schuler-Hintz identified in the NRS 107.210 statement actually amended or were intended to amend that statutory notice, BFP was permitted to rely on that figure as the true payoff amount that day. So BFP's wire of $324,900.31 was a timely tender of the full payoff amount, which operated to discharge the mortgage debt.[28] To the extent that Nationstar believes that the amount quoted in Schuler-Hintz's December 21st NRS 107.210 statement was wrong, Nationstar's remedy is to collect any shortfall from the original borrower Halvorson, as NRS 107.250(3) directs. So BFP is entitled to summary judgment on its quiet-title claim upon re-tender of the $324,900.31, less the $50 that Nationstar retained from the original wire.[29]

---

[25] ECF No. 37-12 at 8 (Hopkins depo. at 71–74).

[26] *Id*. (Hopkins Dep. at 69–70, 72).

[27] *Id*. (Hopkins Dep. at 74, 82).

[28] *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC ("Diamond Spur")*, 427 P.3d 113, 118 (Nev. 2018), *as amended on denial of reh'g* (Nov. 13, 2018).

[29] Because the debt will be paid off and the deed of trust thereby discharged, 12 U.S.C. § 4617 is not implicated.

**II.     BFP lacks standing to assert its NRS 107.077 failure-to-reconvey claim.**

Though Nationstar's wrongful rejection of BFP's December 2021 tender entitles it to relief on its quiet-title claim, no relief is available to BFP under NRS 107.077. That statute establishes deadlines for reconveyance of deeds of trust once satisfied, and it makes deed-of-trust beneficiaries and trustees liable to parties to such documents, their heirs, and assigns for damages, fees, and costs when reconveyance is delayed:

> If the beneficiary fails to deliver to the trustee a properly executed request to reconvey pursuant to subsection 1, or if the trustee fails to cause to be recorded a reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is **liable in a civil action to the grantor, his or her heirs or assigns** in the sum of $1,000, plus reasonable attorney's fees **and** the costs of bringing the action, and the beneficiary or the trustee is liable in a civil action **to any party to the deed of trust** for any actual damages caused by the failure to comply with the provisions of this section and for reasonable attorney's fees and the costs of bringing the action.[30]

As Nationstar points out, however, BFP, which purchased this property at a homeowner-association foreclosure sale, is a stranger to the deed of trust. It is not a party to that document, nor the grantor or the grantor's heir or assign. So NRS 107.077 affords BFP no statutory remedies for Nationstar's actions here. Nationstar is thus entitled to summary judgment in its favor as a matter of law on BFP's NRS 107.077 claim.

## Conclusion

By wiring the full amount stated in Nationstar's NRS 107.210 statement by the December 30, 2021, deadline, Nationstar discharged the debt and satisfied the obligations under the deed of trust, and Nationstar's rejection of that tender was improper. But BFP's status as the

---

[30] Nev. Rev. Stat. § 107.077(3)(emphasis added).

foreclosure-sale purchaser and a stranger to the deed of trust deprives it of standing to seek the remedies afforded by NRS 107.077.

IT IS THEREFORE ORDERED that the parties' crossmotions for summary judgment **[ECF Nos. 36, 37] are GRANTED in part and DENIED in part:**

- Summary judgment is entered in favor of Defendant Nationstar Mortgage LLC dba Mr. Cooper on Plaintiff BFP Investments 4, LLC's first cause of action for violation of NRS 107.077;
- But summary judgment is entered in favor of Plaintiff BFP Investments 4, LLC on its second cause of action for quiet title.

IT IS THEREFORE **DECLARED that once Plaintiff BFP Investments 4, LLC tenders to Nationstar the sum of $324,850.31, title will be quieted in its favor and BFP Investments 4, LLC will own the property free and clear of the deed of trust** recorded on September 18, 2006, as Instrument No. 20060918-0003850.

The Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
January 31, 2024